United States District Court
Eastern District of New York

------------------------------------X

United States of America,

                                    **Memorandum and Order**

   - against -                      No. 25-CR-113 (KAM)


Nidal Isa,

            Defendant.

------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Defendant Nidal Isa is charged in an indictment with one count of wire fraud conspiracy in violation of 18 U.S.C. § 1349 (Count One), one count of wire fraud in violation of 18 U.S.C. § 1343 (Count Two), and one count of conspiracy to violate the Travel Act in violation of 18 U.S.C. § 371 (Count Three).  (*See* ECF No. 1, "Indictment" at ¶¶ 19-25.)

Before the Court are six pretrial motions filed by Defendant Isa:  first, a motion to dismiss Counts One, Two, and Three of the Indictment as jurisdictionally defective; second, a motion to dismiss Count Two for improper venue; third, a motion to suppress Defendant's statements to law enforcement; fourth, a motion to suppress evidence recovered from Defendant's residence; fifth, a motion for a bill of particulars pursuant to Fed. R. Crim. P. 7(f); and lastly, a motion for disclosure pursuant to Federal Rule of

Evidence 404(b).   (*See* ECF No. 67, "Def.'s Mem.")   The Government opposed all motions except for the last, on which it is silent. (*See* ECF No. 78, "U.S. Mem.")

For the reasons that follow, Defendant's motion is **DENIED**, except for the motion for disclosure pursuant to Rule 404(b) of the Federal Rules of Evidence, which is **GRANTED**.

## Background

The Indictment alleges that Defendant Nidal Isa ("Defendant"), along with his co-defendant Stephan DeGroat ("Mr. DeGroat"), operated a fraudulent scheme which deprived their victim of money, property, and its right to the honest services of Mr. DeGroat, its employee.   The victim-company is a non-profit under New York law and a tax-exempt charity under Section 501(c)(3) of the Internal Revenue Code.   (Indictment ¶ 1.)   A subset of its projects is funded by the New York City Human Resources Administration ("HRA").   (*Id.* ¶ 5.)

From around June 2021 to August 2023, Defendant is alleged to have paid Mr. DeGroat approximately $35,000 in bribes and kickbacks, primarily in the form of Zelle money transfers but also in in-kind benefits like a washing machine, dryer, and a television.   (*Id.* ¶¶ 7-9.)   In exchange, Mr. DeGroat used his position of authority to steer the victim-company's contracts to Defendant's company, Nisa Enterprises LLC, which did business under the name Top Contractors. (*Id.* ¶¶ 1-3.)   In particular,

2

Mr. DeGroat divulged confidential information about genuine bids submitted by Top Contractor's competitors to Defendant, directed Defendant to increase the amount of Top Contractors' bids or invoices for services rendered, and approved the payments for those fraudulent invoices. (*Id.* ¶¶ 10-14.) As part of the same scheme, Mr. DeGroat and Defendant circumvented the victim-company's competitive bidding requirements -- which were mandated by HRA in relation to certain city-related projects -- by entering fictitious bids and disregarding competitors' bids. (*Id.* ¶¶ 15-17.) The victim-company is alleged to have sought and received reimbursement from HRA for the costs of projects related to these fraudulent bids. (*Id.* ¶ 18.)

The Indictment is rife with text messages exchanged between Defendant Isa and Mr. DeGroat that were allegedly made in furtherance of their fraudulent scheme. (*See, e.g.*, *id.* ¶¶ 11-12.) For example, it alleges that on or about July 14, 2021, Defendant texted that he was planning to "bid 40," to which Mr. DeGroat counseled that he should "bid 49" instead. (*Id.* ¶ 11.) And, on or about June 27, 2022, Mr. DeGroat is alleged to have texted Defendant to raise an invoice amount charged to victim-company by Top Contractors from an unspecified number to $2929.48, remarking to Defendant that he was "[m]aking [him] extra." (*Id.* ¶ 12.) On at least two occasions, Mr. DeGroat and Defendant exchanged text messages to coordinate their submission of

3

fictitious bids.  (*Id.*  ¶¶ 16-17.)

The Indictment also details some of the kickbacks and in-kind benefits that were transmitted over Zelle and delivered to Mr. DeGroat's home.  (*Id.* ¶ 8.)   These Zelle payments were usually remitted "on the same day or a few days after" the victim-company paid Top Contractors for its services.  (*Id.*)  For example, around September 23, 2021, after victim-company's payment of $12,685.85 to Top Contractors, Top Contractors is alleged to have sent two Zelle payments to Mr. DeGroat totaling $8,000.  (*Id.*)  And, around December 9, 2021, after victim-company paid Top Contractors $51,499.98, Defendant Isa purchased a washing machine, dryer, and an 85-inch television, all of which were shipped to Mr. DeGroat's residence.  (*Id.* ¶ 9.)

On March 28, 2025, the instant Indictment charged Defendant and Mr. DeGroat each with one count of wire fraud conspiracy in violation of 18 U.S.C § 1349 (Count One), one count of wire fraud in violation of 18 U.S.C. § 1343 (Count Two), and one count of conspiracy to violate the Travel Act in violation of 18 U.S.C. § 371 (Count Three).   Mr. DeGroat pleaded guilty to Count One of the Indictment before this Court on September 10, 2025. (*See* ECF No. 44 (Sept. 10, 2025 Minute Entry).)   Defendant has elected to proceed to trial and has filed the pretrial motions addressed herein.  The Court next moves to its consideration of each motion.

## Discussion

**I.    Motion to Dismiss Counts One, Two and Three As Jurisdictionally Defective**

Defendant argues that Counts One and Two -- alleging conspiracy to commit wire fraud and wire fraud -- fail to specify the alleged wire communications that were transmitted in interstate commerce, and that Count Three -- alleging conspiracy to violate the Travel Act -- also fails to specify acts that involve a facility in interstate commerce.  Based on these defects, Defendant moves for dismissal of those Counts.

In reviewing a motion to dismiss an indictment, the Court takes the allegations within the indictment as true.  *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004).  The Federal Rules of Criminal Procedure instruct that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  And, in the Second Circuit, "[i]t is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  "Nevertheless, 'an indictment need do little more than to track

the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *Id.* (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992), *cert. denied*, 504 U.S. 926 (1992)). "The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotations omitted); *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979) (dismissal of indictment should be "reserved for the truly extreme cases").

Pursuant to these principles, the Second Circuit and its district courts have, time and again, declined to require the Government to specify in its indictments the offense's specific connection to interstate commerce. For example, the Second Circuit in *United States v. Alfonso* reversed a pretrial dismissal of an indictment for failing to satisfy the jurisdictional requirement of the Hobbs Act, holding that the indictment was sufficient despite not "specify[ing] . . . precisely how the conspiracy would have affected interstate commerce" and allowing the government to prove the interstate nexus at trial. 143 F.3d at 776-77. Likewise, the district court in *United States v. Serrano* found one count of the indictment sufficient where it specified merely that ammunition "had previously been shipped and transported in interstate and foreign commerce," and conversely, found another

6

count of the Indictment insufficient where it did not mention the interstate nexus at all.  191 F. Supp. 3d 287, 290 (S.D.N.Y. 2016). In so doing, it found that "[a]ny as-applied challenge to the evidence of interstate nexus in this case will be addressed by the evidence that the Government offers at trial."  *Id.* at 291; *see also United States v. Diallo*, 2009 WL 4277163, at *3 (S.D.N.Y. Nov. 24, 2009) (finding that the "indictment is not required to include [] information" as to connection to interstate commerce and noting that "whether the evidence at trial establishes the requisite nexus to interstate commerce —- among the other elements of the charged offenses -- remains to be seen").

Here, the Indictment specifically alleges as to Counts One and Two that "interstate" wires were used in "transmit[ting] and caus[ing] to be transmitted" "writings, signs, signals pictures and sounds," including Zelle transfers.  (Indictment ¶¶ 20(a), 20(b), 22.)  Similarly, as to Count Three, the Indictment alleges that "facilities in interstate and foreign commerce" were used in Defendants' alleged conspiracy.  (*Id.* ¶ 24.)  Defendant argues that he is not "adequately put on notice of the crime alleged," (Def.'s Mem. at 5), but the Court disagrees.  The Indictment alleges in detail, and using Defendant's own text messages, an elaborate scheme of bribes, kickbacks, and bid-rigging that operated approximately from June 2021 to August 2023.  Such allegations are more than sufficient

7

to apprise Defendant of the charges against him. *See Alfonso*, 143 F.3d at 776.

Defendant argues in his Reply that the Court should dismiss the Indictment because he "has little to no notice over where this [interstate] commerce occurred," but this position finds no support in the law. (ECF No. 79, "Def.'s Reply" at 3.) The Second Circuit has instructed that the "interstate nature" of wire communications do not have to be "reasonably foreseeable." *United States v. Blackmon*, 839 F.2d 900, 908 (2d Cir. 1988); *United States v. Beridze*, 415 F. App'x 320, 326 (2d Cir. 2011) (summary order) ("[T]he government was not required to prove that [the defendant] actually foresaw the interstate nature of the third-party wire communications.").

Because this Indictment sufficiently alleges "the elements of the offense charged," "informs a defendant of the charge," and "enables him to plead an acquittal or conviction in bar of future prosecutions," no more is needed at this early stage. *Alfonso*, 143 F.3d at 776 (quotations omitted); *see also United States v. Dawkins*, 999 F.3d 767, 779-80 (2d Cir. 2021) (concluding that indictment was sufficient where it provided "more than enough background to inform the defendants of when and where the offense conduct took place"). The specific interstate character of the wires and facilities used will have to be proved by the Government at trial. Accordingly, Defendant's motion to dismiss Counts One,

8

Two and Three as jurisdictionally defective is DENIED.

## II.  Motion to Dismiss Count Two as Defective Due to Improper Venue

Defendant next moves to dismiss Count Two for wire fraud in violation of 18 U.S.C. § 1343 as defective due to lack of venue. As with Defendant's other motion to dismiss, the Court is mindful that allegations in the Indictment are taken as true at this stage, *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004), and that the Indictment need not do more than track the "the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" to be sufficient, *Alfonso*, 143 F.3d at 776 (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992), *cert. denied*, 504 U.S. 926 (1992)).

Defendant argues that Count Two should be dismissed because the Indictment is silent as to where the Zelle money transfers were initiated or received.  (Def.'s Mem. at 7.)  That kind of specificity is not required at the pre-trial stage.  Rather, the Indictment sufficiently alleges venue because it states that the wire fraud occurred "within the Eastern District of New York and elsewhere."  (Indictment ¶ 22.)  Courts in this district have uniformly held that such allegations, however bare, are sufficient at the pre-trial stage.  *United States v. Ji*, 2022 WL 595259, at *9 (E.D.N.Y. Feb. 28, 2022) ("Courts have repeatedly declined to dismiss on venue grounds indictments alleging 'that the offenses occurred within the Eastern District of New York and elsewhere.'"

9

(quoting *United States v. Bellomo*, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003))); *United States v. Bronson*, 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007) ("The law of this Circuit is clear that the Government's burden is satisfied with regard to pleading venue by alleging that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information." (citations omitted)); *United States v. Hwa*, 2021 WL 11723583, at *19 (E.D.N.Y. Sept. 3, 2021) (collecting cases). Where an indictment alleges that criminal activity occurred "within the Eastern District of New York and elsewhere," a "ruling on the propriety of the prosecution's choice of venue" is appropriately deferred to trial. *Hwa*, 2021 WL 11723583, at *19. Defendant "may renew his motion to dismiss on venue grounds after the government's case in chief has been presented and again, if need be, at the end of the entire case." *Bellomo*, 263 F. Supp. 2d at 579-80; *see also United States v. Mahaffy*, 2006 WL 2224518, at *7 (E.D.N.Y Aug 2, 2006).[1]  Accordingly, the motion to dismiss

---

[1] The Government also correctly argues that it is not limited to proving that the Zelle transfers were transmitted in the Eastern District of New York for the purposes of establishing venue. (U.S. Mem. at 17.)  So long as any wire in furtherance of the scheme "begins its course, continues or ends" in the Eastern District of New York, venue is proper here. *United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015).  The Government is also not limited to proving that the Zelle transfers form the basis of the wire fraud charge because it is not bound by its "to wit" clause. *United States v. Teman*, 465 F. Supp. 3d 277, 298-99 (S.D.N.Y. 2020) ("[T]he Second Circuit 'ha[s] never suggested that a to wit clause binds the government to prove the exact facts specified in a criminal indictment.'" (quoting *United States v. Bastian*, 770 F.3d 212, 221 (2d Cir. 2014))).

10

Count Two for improper venue is DENIED without prejudice to renew at trial.

### III. Motion to Suppress Statement to Law Enforcement

Defendant moves to suppress a statement he "made . . . to federal agents in violation of his rights under the Fifth and Sixth Amendments of the Constitution." (Def.'s Mem. at 8.) The challenged statement by Defendant was made in response to a question asked by federal agents about a "safe found in his residence" upon the execution of a search warrant. (*Id.* at 11.) The Government has represented that it "does not intend to use this statement at the defendant's trial for the crimes charged in the Indictment." (U.S. Mem. at 18.) Accordingly, the motion to suppress is DENIED as moot. *See Gobern v. United States*, 2021 WL 3774293, at *3 (S.D.N.Y. Aug. 25, 2021) ("[T]he Government's decision not to offer challenged evidence warrants the denial of a suppression motion as moot."); *see, e.g.*, *United States v. Barnaby*, 2021 WL 2895648, at *10 (E.D.N.Y. July 8, 2021); *United States v. Ahmed*, 94 F. Supp. 3d 394, 437 (E.D.N.Y. 2015).

### IV. Motion to Suppress Evidence Recovered from Defendant's Katonah Address

Next, Defendant moves to suppress evidence recovered from his address in Katonah, New York because the search warrant issued by the Southern District of New York was not supported by "probable cause to believe contraband would be discovered within." (Def.'s

11

Opp. at 13.)

As the Supreme Court has instructed, probable cause is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotations omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Accordingly, a magistrate judge's determination is to be accorded "substantial deference," *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983), which "derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant," *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 236).

Defendant argues that the Katonah address is his residence and not a business address for Top Contractors, so the search was not supported by probable cause. (Def.'s Opp. at 14.)  In so doing, he acknowledges that the Katonah address was "merely listed as a business address in invoices to the [victim-company] from March 2021 to July 2023," after which the business address was

changed to one in Bedford Hills.  (*Id.* at 14-15.)  These facts require the opposite conclusion.  Because Top Contractor's invoices listed the Katonah property as its place of business throughout the alleged scheme, there was probable cause to believe the premises contained "evidence of [the] crime."  (*See* ECF No. 67-3 at 16.);  *Gates*, 462 U.S. at 238.  Beyond that, the Katonah address "was also listed as the business address on contracts entered into between Top Contractors and [the victim-company]," was the address on record for an account opened in the name of Nisa Enterprises LLC in the relevant time period, and was the billing address for a $1,500 gift card that Defendant Isa purchased for Mr. DeGroat. (ECF No. 67-3 at 17-18.)  Moreover, the affiant of the Katonah premises search warrant affidavit stated that, based on her training and experience, members of illicit organizations frequently keep business-related information in their homes and that people engaged in fraud schemes tend to keep ledgers of illicit activities in their homes.  (*Id.* at 19.)  Based on the foregoing, the Court finds that the search warrant was supported by probable cause.

Defendant's argument that the business address for Top Contractors was changed in July 2023 to one in Bedford Hills, and thus, that any inference that evidence of a crime could be found at the Katonah address would be "stale," is unavailing.  (Def.'s Mem. at 15.)  The key inquiry is whether the "information in the

13

affidavit is sufficient to establish a 'fair probability' that evidence of criminal activity would be found at a particular place." *United States v. Zoernack*, 2005 WL 1837962, at *2 (S.D.N.Y. Aug. 2, 2005) (declining to find invalid a search warrant even if relied on information that was two years old); *United States v. Singh*, 390 F.3d 168, 181-183 (2d Cir. 2004) (search warrant based on twenty-month-old information was not stale). Considering the relatively short period of time between July 2023 (when the business address was changed to one in Bedford Hills) to the time the warrant was issued and executed in April 2025, and the fact that Katonah property continued to serve as Defendant's residence, there was at least a fair probability that evidence of criminal activity existed there. (*See* ECF No. 67-3 at 3, 17-18.)

Finally, Defendant argues that, even if the issuance of the search warrant was proper, the Court should take some unspecified curative action as to the agents' attempt to open the safe found at the Katonah address because the safe was outside the scope of the search warrant. This argument, like the others, is meritless. By its plain terms, the search warrant was authorized not only for the apartment but also "any locked or closed containers." (*Id.* at 5.) For the foregoing reasons, the motion to suppress evidence recovered from the Defendant's Katonah address is DENIED.

## V.   Motion for a Bill of Particulars

Defendant next moves for a bill of particulars as to each

14

Count of the Indictment "identifying the messages and emails that the Government intends to rely on for trial," providing "an accounting of money exchanged between [the victim-company], [D]efendant, and [Mr. DeGroat]," and "a listing of specific jobs that the Government alleges were part of the overarching fraud." (Def.'s Mem. at 17.)

"The decision to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Sachakov*, 812 F. Supp. 2d 198, 214-15 (E.D.N.Y. 2011) (citing *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quotations omitted). Crucially, it is "not meant to enable a defendant to 'obtain a preview of . . . the government's evidence before trial' or 'to learn the legal theory upon which the government will proceed." *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (quoting *United States v. Kang*, 2006 WL 208882, at *1 (E.D.N.Y. Jan. 25, 2006)). A bill of particulars will only be granted to the extent "the information sought is necessary, not whether it is helpful." *United States v. Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012) (quoting *United States v. Ramos*, 2009 WL 602997, at *1 (S.D.N.Y. Mar. 3, 2009)). "Consistent with this

15

principle, courts generally deny requests for bills of particulars concerning the wheres, when, and with whoms of the crime." *Id.* (quotation omitted).

The Indictment and subsequent disclosures from the Government are more than sufficient to "advise the defendant of the specific acts of which he is accused." *Walsh*, 194 F.3d at 47. Indeed, the Court is hard-pressed to identify what *more* the Government can provide. The Indictment lays out in much detail, using specific text messages, and with specific corresponding dates, the alleged bid-rigging and bribery scheme helmed by Defendants. In so doing, it goes even beyond naming the "wheres, when, and with whoms of the crime," *Perryman*, 881 F. Supp. 2d at 430, and is therefore more than sufficient in "allow[ing] [for the] preparation of a defense," "avoid[ing] unfair surprise," and in "preclud[ing] double jeopardy." *United States v. GAF Corp*, 928 F.2d 1253, 1260 (2d Cir. 1991).

The need for a bill of particulars is further obviated by the fact that the Government has produced voluminous discovery materials, "includ[ing] multiple search warrant affidavits that provide additional detail about the scheme and the government's investigation," and an itemized accounting of each fraudulent contract which resulted in losses the Government determined were supportable by a preponderance of the evidence. (*See* U.S. Mem. at 27-28; ECF No. 74.); *United States v. Chen*, 378 F.3d 151, 163

16

(2d Cir. 2004) ("[A] bill of particulars is not necessary where the Government has made sufficient disclosures concerning its evidence and witnesses by other means."). Accordingly, the motion for a bill of particulars is DENIED with prejudice.

## VI.  Motion for Rule 404(b) Disclosure

Lastly, Defendant moves for the Government to provide its Rule 404(b) disclosure. Fed. R. Evid. Rule 404(b). Because the Federal Rules of Evidence require the Government to make its Rule 404(b) disclosure "before trial," the Court construes this as a motion to compel the Government to provide its required disclosures prior to the deadline the filing for motions *in limine* and GRANTS the motion. The Government shall provide its Rule 404(b) disclosures by April 13, 2026, one week before the deadline to file motions *in limine*, April 20, 2026.

## Conclusion

Defendant's motions are **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)   The motion to dismiss Counts One, Two, and Three as jurisdictionally defective is DENIED;

(2)   The motion to dismiss Count Two for improper venue is DENIED WITHOUT PREJUDICE;

(3)   The motion to suppress his statements to law enforcement is DENIED as moot;

(4)   The motion to suppress evidence recovered from Defendant's residence is DENIED WITH PREJUDICE;

(5)   The motion for a bill of particulars is DENIED WITH PREJUDICE;

(6)   The motion to compel disclosures pursuant to Rule 404(b) of the Federal Rules of Evidence is GRANTED. The Government shall provide its Rule 404(b) disclosures on or before April 13, 2026.


**So ordered.**

Dated:    March 31, 2026
          Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

18